UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 800 |
| v. | Judge Andrea R. Wood |
| EDGAR GURROLA | |

### GOVERNMENT'S SENTENCING MEMORANDUM

In December 2017, a man walked into a police department in New York and confessed that he had participated in a group chat in which the users were sharing child pornography. When FBI agents investigated, they found that defendant Christopher Martin was the facilitator of the group. The messages show that defendant required that all participants in the group provide child pornography. The messages also show that defendant demanded videos of extremely young victims, writing "send young girls getting fucked," and complaining when videos were of children he deemed "too old." Aside from the messages, defendant possessed and shared videos depicting bestiality with children and with titles such as "Tara 7Yr – Ass Rape." The content of the videos and images defendant possessed is reprehensible. Defendant possessed and traded this content with no concern for the harm caused to the children forced to perform in the videos and images.

Unfortunately, defendant's background is aggravating. While his own history of abuse offers some mitigation, that mitigation is limited because defendant committed this horrible crime even though he has a prior conviction for repeatedly sexually abusing his 7-year-old stepsister. Defendant needs to be stopped. Given the

extremely serious nature of this crime and his history of in-person sexual abuse of a minor, a sentence of 37 years is warranted and sufficient, but not greater than necessary, upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

## I.    Background

On November 12, 2020, the grand jury returned an indictment charging defendant with two counts of offering to exchange child pornography, in violation of Title 18, United State Code, Section 2251(d)(1)(A). Dkt. 1. On January 7, 2026, defendant was charged in a superseding information with transporting child pornography in violation of Title 18, United State Code, Section 2251(a)(1)(A). Dkt. 122. Defendant pled guilty the same day in an 11(c)(1(C) plea agreement in which the parties agreed that the Court would impose a sentence of between 20 and 40 years imprisonment. Dkt. 124.

## II.   Offense Level Calculation and Guidelines Range

The government agrees with the U.S. Department of Probation that, pursuant to the November 2025 Sentencing Guidelines Manual, defendant falls into a criminal history category of II and has an offense level of 42 based on his possession of over 600 child pornography images and videos featuring sadistic content involving minors under 12 years old, as well as enhancements for engaging in a pattern of activity involving sexual abuse of a minor and use of a computer. PSR ¶¶ 17-30. Accordingly, the government agrees with Probation that defendant's sentencing Guidelines range

2

is 360 months to life, but that, because the statutory maximum is 480 months, the governing Guidelines range is 360 months to 480 months. PSR ¶ 92.

### III.    The §3553(a) Factors Support Imposition of a Sentence of 37 Years

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The "Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). Although a sentence within the Guidelines is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.

For the foregoing reasons, the government respectfully submits that a sentence of 37 years is warranted in this case. While this sentence is significant, it is within the Guidelines range, and it appropriately reflects the egregious nature and circumstances of defendant's offense, the need to afford adequate deterrence, to promote respect for the law, and to protect society.

### A.    The Nature and Circumstances of Defendant's Crime

Defendant is charged with possessing child pornography. This is a serious crime with real and vulnerable victims, even when it involves only a few images. But here, defendant did more than just possess child pornography. He was operating an

3

online Kik chat group that was sharing copious amounts of child pornography on a near daily basis. Defendant was the organizer and leader of the group. He enforced the rules. The primary rule was that if members wanted to stay in the group, they had to constantly share child pornography. For example, on October 16, 2017, when a man wanted to join the Kik group, defendant wrote, "Send what you got. Anything young is fine for group trade . . . Send youngest." When the man sent a freeze frame of a young girl, defendant wrote, "Any kids that age getting fucked; Go; I added you to our future group . . . Send young girls getting fucked." The man started sending defendant videos, and defendant wrote, "she is hot; any more of her" and "to [sic] old." Later, he wrote, "Last girl is hot; Tell was her first time lol."

Defendant was a prolific sharer and trader of child pornography in this group. He shared Dropbox links to videos with the following titles:

- "Assorted young solo/penetration"
- "Underage vids"
- "Young vids hot"
- "Best Cp"
- "11-12 girls"

If other users in the group were slow to share child pornography, defendant would pressure them to do so, writing, "If you don't send [images to the group] you will be removed [from the group]."

On October 24, 2017, as the group continued to share child pornography videos, defendant continued to enforce the rules, writing "Nice stuff guys . . . where is all the traders at; been slow all day." On November 27, 2017, defendant started a new chat and wrote, "everyone needs to be sending. EVERYONE." On November 27, defendant

4

sent a link to a folder titled, "Girls Using Toys an Object." That folder alone contained about 60 videos, including videos of minor girls penetrating themselves with sex toys and other objects.

Two aspects of defendant's crime are particularly aggravating. First, as described above, defendant did not just possess a few images of child pornography. This is not a case where defendant was searching for adult pornography and accidentally downloaded child pornography. It is not a case where defendant made an isolated mistake. He was aggressively leading a chat group and was constantly pressuring members to share new images or videos of child pornography. Defendant was thus involving others in his criminal activity and ensuring that the flow and sharing of child pornography between members continued and spread. The harm defendant caused cannot be stopped by seizing one computer or arresting one person. The hundreds of videos and images that he shared or that he caused others to share are likely still being circulated today because of his actions. This causes significant harm to victims. As one victim put it in a victim impact statement: "I'm sure most of them are passing it on to other people. . . They tell their friends and their friends see me. Knowing people are watching what happened gives me a mix of anxiety, sadness, anger and it disgusts me." PSR at 33.

Second, the content of the child pornography defendant shared and possessed is awful. It shows a complete disregard for societal norms or for the harm caused to the young children forced to perform sexual acts to create the content. For example, one of the videos defendant shared is a 7-minute video titled "'! New ! (Pthc) 2006

Tara 7Yr - Ass Rape." It depicts an extremely young girl being penetrated anally by an adult male with his fingers and with objects. The girl repeatedly says, "it hurts" and "that hurts bad." Another video defendant shared features a minor girl performing fellatio on a dog. The nature of this content is aggravating and warrants a significant sentence.

As captured by the victim impact statements, which are attached to the PSR, the harm caused by defendant's crime is real. Victims described the ongoing trauma they have suffered, even years after they were abused. They described anxiety, fear, insomnia, and depression. These victims will never fully recover. While defendant did not produce the child pornography he possessed and shared, the Supreme Court has recognized that the demand for child pornography by defendant and other possessors "harms children in part because it drives production, which involves child abuse." *Paroline v. United States*, 572 U.S. 434, 439–40 (2014). Put simply, defendant's facilitation of the sharing of hundreds of images and videos of young children being abused helped to drive the creation of those images and videos, and the creation of future images and videos of other abused children. As one victim's mother put it, "Without a market to receive and trade those images, without the encouragement of those who wanted to acquire the images, I truly believe this abuse would not have occurred. All those who trade these images and thereby create the demand . . . are participants in the exploitation of my daughter." PSR at 37.

Defendant's offense is extremely serious, and the Guidelines sentencing range reflects that seriousness. To the extent the range is high, it is because of the specific

characteristics of defendant's offense and because of his prior child sexual abuse conviction. The Guidelines range is high, but it is appropriate, and a sentence of 37 years, within the Guidelines range, is warranted in this case.

### B.      History and Characteristics of Defendant

Defendant is 46 years old and has lived in the Chicago area for most of his life. PSR ¶ 48. Defendant has had a difficult life. He lost his mother and brother to a house fire when he was five years old. PSR ¶ 48. After his mother died, he lived with his stepfather and a girlfriend, who sometimes hit him. PSR ¶ 49. He also reportedly was sexually abused by both a male friend of his father's and an aunt, both when he was younger than 10 years old. PSR ¶ 64. As a young child, he moved in with his grandmother, and she provided a more stable family life. PSR ¶ 50. Defendant has three children, including one with his wife. PSR ¶ 51. Defendant also suffers from several different health conditions for which he is receiving medication in prison. PSR ¶¶ 58-61.

Defendant's difficult life and current health issues do offer some mitigation in this case. In particular, the sexual abuse he suffered as a child is mitigating. But this mitigation is limited, and it is accounted for in the government's recommendation of 37 years, which is far below the upper end of the Guidelines range. The mitigation is limited because defendant has a horrible prior conviction for repeatedly sexually assaulting his 7-year-old stepsister. The specifics of that case are damning. When defendant was 24 years old, he repeatedly sexually assaulted his stepsister from when she was 7 years old until she was 10 years old. The abuse included sexual

7

intercourse and included at least one incident where he had sex with her in his car while her mother was hospitalized. This is a shocking crime. It shows that defendant is not just a possessor and sharer of child pornography, which alone is a serious crime, he is a person who has sexually harmed a child in-person as well. It is particularly troubling that he committed the current offense starting at latest in October 2017, less than four years after he was paroled in April 2014 for his sexual assault conviction.

This history, and the fact that he re-offended with another child sex offense so quickly after his sexual assault conviction, is extremely aggravating. It shows that defendant presents a serious danger to society. It shows that only a significant prison sentence will protect society and prevent defendant from harming other children. Defendant's history and characteristics may offer some mitigation, but do not support a downward deviation from the Guidelines. A sentence of 37 years is appropriate and just given defendant's history.

### C. The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider).

First, and foremost, a Guidelines sentence would protect the community. As established in the sections above, defendant possessed hundreds of images and videos of child pornography. He was facilitating a chat group that was sharing hundreds more of these graphic, inhumane videos and images. Defendant did not turn himself

in. The only reason he was stopped from downloading and sharing such images was because he was arrested. Given his history of in-person sexual assault of a child, there is a real risk that defendant will recidivate and either harm another child in person or go back on the internet and share and download child pornography. Defendant is middle-aged, and the government's proposed sentence would have him in custody until he is well into his 60s or 70s. But defendant does not need to be a young man to download and share child pornography. Even an older person can access the internet and download harmful materials. A lengthy custodial sentence will protect the community.

A sentence in the Guidelines of 37 years would also provide specific deterrence. If defendant is given a light sentence, there is a real risk that he will fall prey to temptation again and download more child pornography. Courts regularly cite the need for such deterrence in sentencing possessors of child pornography, and the Seventh Circuit has upheld such reasoning. *United States v. Mantanes*, 632 F.3d 372, 375 (7th Cir. 2011) (upholding 210-month sentence, at low end of Guidelines range, for dentist who possessed 1,380 images and 141 videos because, in part, trial court explained "need to deter this type of behavior"). Here, given defendant's history of child sex assault and his facilitation of a child pornography chat group, a significant sentence is warrant. A sentence of 37 years will provide appropriate specific deterrence.

General deterrence is also important. As discussed above, the production of child pornography is driven by the demand for such content. A meaningful Guidelines

sentence will send the message that possessing such material is unacceptable and has serious consequences. It will disincentivize bad actors from seeking out child pornography and reduce demand for this abhorrent material to be created.

## IV.    SUPERVISED RELEASE

Given the circumstances of the offense and all the factors set forth in Title 18, United States Code, Section 3553(a), the government recommends that the Court impose a period of supervised release of 15 years. *See* PSR ¶ 95.

The mandatory, discretionary, and special conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on pages 17 through 24 of the PSR. The government agrees with the conditions proposed in the PSR and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (4), (6), (8) and special conditions (5) and (8) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and assisting the defendant in reintegrating into society upon his release. The government further agrees that discretionary conditions (7), (9), (14), (15), (16), (17), (18), (22), and (23) and special condition (6), (7), (9), (10), and (11) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed. Discretionary condition (24) is also appropriate because it will properly allow a probation officer to search for contraband only if that officer has reasonable suspicion to believe defendant has violated his conditions.

10

## V.      RESTITUTION

The government is seeking a total restitution amount of $30,000. Defendant pled guilty to transportation of child pornography in violation of Title 18, United State Code, Section 2251(a)(1). Title 18, United States Code, Section 2259(a) provides that, in addition to Section 3663 and 3663A, "the court shall order restitution for any offense under this chapter [including sexual exploitation, in violation of Title 18, United States Code, Section 2251(a)]." Section 2259(b) states that "the order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses."

The Congressional findings to the enactment of Section 2259(a) state, "The harms caused by child pornography begin, but do not end, with child sex assault because child pornography is a permanent record of that abuse and trafficking in those images compounds the harm to the child." *See* The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299 § 2, 132 Stat. 4383 (2018). Further, Congress found that "subsequent distribution and viewing become psychologically intertwined and each compound the harm suffered by the child-victim." *Id.*

Section 2259(c)(2) further provides that the Court shall order restitution for future expenses, including the estimated costs of future mental and medical treatment.  *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001). When determining restitution for future losses, while the amount must be reasonably certain, the Seventh Circuit is "mindful of the inherent uncertainties attendant upon

11

an award of prospective damages." *Id*. at 455 n.5 (upholding a restitution award of $304,200 under § 2259 for future mental health treatment for a minor sex abuse victim, as her mental health trauma "will continue to manifest itself for years"). Thus, when awarding restitution to victims of sexual exploitation, the district court has significant discretion to make a reasonable estimate of an amount of future expenses that reflects the full loss to the victim.

Here, defendant's actions against each of the identified victims will impact them for the rest of their life. The Court's restitution order should provide a fund upon which the victims can draw in order to pay for future therapy needs. Any individual's duration of therapy will be specific to that individual. *See* Clinical Treatment Guidelines for the Treatment of Posttraumatic Stress Disorder, American Psychological Association, available at https://www.apa.org/ptsd-guideline/patients-and-families/length-treatment, last accessed November 24, 2025.

Here, the government has identified seven victims, some of whom have counsel who have compiled restitution requests and others who do not have counsel and have not provided information about restitution. The government is seeking a minimum of $3,000 in restitution for each victim for future therapy costs. This request is conservative and reasonable given the harm defendant caused by downloading and sharing the images and videos of the victims. As detailed in the victim impact statements provided to the Court, many of the victims are still suffering from anxiety, fear, insomnia, and depression, even as they enter and progress through adulthood. The total requested restitution amount of $30,000 will provide resources for the

12

victims as they continue to address the abuse they suffered and the continued trauma they experience from their abuse being shared on the internet.

## VI.   CONCLUSION

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests a sentence of 37 years followed by 15 years of post-release supervision.


Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:   */s/ Elie Zenner*
ELIE ZENNER
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Dated: May 12, 2026

13