UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br><br>v.<br><br>CHRISTOPHER MARTIN,<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 20 CR 800<br><br>Honorable Virginia Kendall,<br>*Judge Presiding* |

## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM

SUSAN M. PAVLOW
Attorney for defendant
53 West Jackson Boulevard, Suite 1550
Chicago, Illinois 60604
312-322-0094
smpavlow@mac.com

**TABLE OF CONTENTS**

I. INTRODUCTION............................................................................................1

II. OBJECTIONS TO THE PSR........................................................................2

      A.     The five-point enhancement for a pattern of sexual exploitation of minors pursuant to §2G2.2(b)(5) is inapplicable.................................3

      B.     The five-point enhancement pursuant to §2G2.2(b)(7) should not be applied.......................................................................4

      C.     The two-point enhancement pursuant to §2G2.2(b)(6) for use of a computer should not be applied......................................................5

      D.     Restitution........................................................................6

      E.     Objections to the Conditions of Supervised Release – Discretionary Condition 9..........................................................7

III. SECTION 3553(a) FACTORS....................................................................7

      A.     Guidelines......................................................................8

      B.     Nature of the offense........................................................9

      C.     Mr. Martin's Personal History and Characteristics.........................9

      D.     The circumstances of his incarceration warrant consideration of a below guideline sentence...................................................14

      E.     A 20-year sentence reflects the seriousness of the offense, promotes respect for the law and promotes just punishment.............16

      F.     A 20-year sentence satisfies the goal of deterrence.........................18

IV. CONCLUSION............................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Beaird v. United States,* No. 25-5343 (U.S. cert. granted Apr. 20, 2026)................5

*Concepcion v. United States*, 597 U.S. 481, 486 (2022)..........................................1

*Gall v. United States*, 552 U.S. 38 (2007).........................................................1, 7

*United States v. Bernier,* 758 F.Supp. 195 (S.D.N.Y. 1991)...............................19

*United States v. Biddle*, 2014 WL 5089187......................................................6

*United States v. Booker*, 543 U.S. 220 (2005).............................................1, 7, 19

*United States v. Carter*, 530 F.3d 565 (7th Cir. 2008)..........................................8

*United States v. Collins*, 2018 WL 283237 (C.D. Ill. 2018)................................17

*United States v. Corner,* 598 F.3d 411 (2010)....................................................8

*United States v. Debus*, 688 F.Supp.3d 201 (M.D. Aug. 23, 2023)....................3, 4

*United States v. D.M.*, 942 F. Supp.2d 327, 352 (E.D.N.Y.)................................2

*United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2010)................................2

*United States v. Grober*, 624 F.3d 592, 603 (3rd Cir. 2010)................................2

*United States v. Hinkley,* 2026 WL 280365.....................................................17

*United States v. Jones*, 2021 WL 3609298 ........................................................8

*United States v. Kelly*, 868 F.Supp.2d 1202 (2012) (D.N.M. 2012)......................6

*United States v. Ketcham,* 80 F.3d 789, 794 (3rd Cir. 1996) 937 (9th Cir. 1997).........4

*United States v. Martínez Encinias*, 682 F.Supp.3d 993 (2023)...........................15

*United States v. May,* 2026 WL 114826 (S.C. Jan. 15, 2026)................................5

*United States v. Maynard*, 2025 WL 316113 (C.D. Maryland 2024)....................17

*United States v. Phillips*, 54 F. 4th 374, 382 (6th Cir. 2022)................................5

*United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014)....................................2

*United States v. Rita*, 551 U.S. 338 (2007)........................................................7

*United States v. Reynolds*, 2018 WL 1257751 (S.D. Ill.).....................................17

*United States v. Robles*, 553 F.Supp.3d 172 (2021)...........................................15

*United States v. Stathas*, 2024 WL 4942265 (7th Cir. 2024)................................17

*United States v. Willis*, 663 F.Supp.3d 1203 (2023) ..........................................15

**Statutes**

18 U.S.C. §3553.............................................................................1, 7, 15, 17, 20

18 U.S.C. §2252A.................................................................................4, 7, 8, 9

18 U.S.C. §2259(a)....................................................................................6

**Guidelines**

U.S.S.G. §2G2.2................................................................................2, 3, 4, 5, 8, 18

**Rules**

Federal Rule of Criminal Procedure 32………………………………………………………1

**Other Sources**

Carol S. Streiker, *Lessons from Two Failures: Sentencing for Cocaine and Child
    Pornography under the Federal Sentencing Guidelines in the United States,*
    76 Law & Contemp. Probs. 27, 37 (2013)……………………………………………..2
Case Western Reserve Law Review, Vol. 70, Issue 1 (2019)
    "A Partial Fix of a Broken Guideline," 59-60………………………………………....3
2012 Commission Report, note 4 at 313. U.S. Sentencing Comm'n,
    *Report to Congress: Federal Child Pornography Offenses* (2012)……………….....3
*Federal Sentencing of Child Pornography: Non-Production Offenses*
    (pub. June 29, 2021) ussc.gov…………………………………………………………..8
Gary Sweeten, et. al., *Age and the Explanation of Crime Revisited,* 42 J.
    Youth & Adolescence 921 (2013). *Measuring Recidivism; The Criminal
    History Computation of the Federal Sentencing Guidelines, A
    Component of the Fifteen Year Report on the U.S. Sentencing Commission's
    Legislative Mandate,* (May 2004), p. 12…………………………………………....18
Marah Stith McLeod, *Showing Mercy Through a
    Presumption of Retribution,* 102 Tex. L. Rev. 1473, 1476 (2024)………………16, 17
*Technology and Investigation by Law Enforcement in Child
    Pornography Case,* ussc.gov. 40-41. 2012 Report to the Congress:
    Federal Child Pornography Offenses, Sentencing Options…………………….……6
U.S. Sentencing Commission, Judiciary Sentencing Information
    (JSIN) database…………………………………………………………………………18
United States Sentencing Commission, FY 2020 through FY 2024 Datafiles.
    https://www.ussc.gov/research/quick-facts...............................................................18

The defendant, Christopher Martin, by counsel, Susan Pavlow, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. §3553, and the United States Supreme Court opinions in *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), respectfully submits the following sentencing memorandum.

## I.    Introduction

Mr. Martin is extremely remorseful for his conduct and under any standard, will be sentenced to a substantial period of incarceration. He is reflective and ashamed of his actions. The offense conduct — a period of two months – occurred almost ten years ago and must be considered in the context of Mr. Martin's history which is replete with traumatic episodes: ███████████████████████ ████████████████████████████████████; (2) he was the sole survivor of a house fire that killed his teenage mother and younger brother; (3) he suffered physical abuse as a child; and, (4) he was neglected and abandoned by the man he later found out was not his biological father. Since his arrest, he has begun to address his extensive childhood trauma. "When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion v. United States*, 597 U.S. 481, 486 (2022). An evaluation of all the sentencing factors warrants a sentence of 20 years, which is 5 years above the statutory minimum by agreement of the parties, along with any term of supervised release. Such a sentence is more than sufficient, but not greater than necessary, to satisfy the goals of sentencing.

1

## II.     Objections to the PSR

Courts around the nation, as well as the Sentencing Commission, have recognized the non-production child pornography guidelines at issue here are deeply flawed. *United States v. Grober*, 624 F.3d 592, 603 (3rd Cir. 2010) (collecting cases "across the country [finding] §2G2.2 flawed"); *United States v. D.M.*, 942 F.Supp.2d 327, 352 (E.D.N.Y. 2013) ("Rationales for child pornography Guidelines for non-production offenses have been shredded."); *United States v. Price*, 775 F.3d 828, 841 (7th Cir. 2014) (§2G2.2 "calls for the application of multiple enhancements that apply in almost every case…"). These guidelines are based on congressional directives rather than the Sentencing Commission's empirical approach and "in the span of a single decade (from 1997 to 2007), the mean sentence of child pornography offenders increased. . .443%." *D.M.*, 942 S.Supp.2d at 350, citing Carol S. Streiker, *Lessons from Two Failures: Sentencing for Cocaine and Child Pornography under the Federal Sentencing Guidelines in the United States*, 76 Law & Contemp. Probs. 27, 37 (2013). Many of the enhancements apply in almost all cases making §2G2.2 an "eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." *United States v. Dorvee*, 616 F.3d 174, 188 (2nd Cir. 2010).

"Most of the enhancements in section §2G2.2 (e.g., 'use of a computer,' the number-of-images enhancements) were promulgated during an earlier era of computer and internet technologies when the enhancements were intended to apply only in atypical or aggravated cases. But as a result of today's computer and internet

technologies, including peer-to-peer (P2P) file-sharing, the vast majority of those antiquated enhancement provisions now apply to typical defendants." Case Western Reserve Law Review, Vol. 70, Issue 1 (2019) "A Partial Fix of a Broken Guideline", 59-60, citing 2012 Commission Report, note 4 at 313. U.S. Sentencing Comm'n, Report to Congress: Federal Child Pornography Offenses (2012). Such is the case here where Mr. Martin's conduct in a group chat in October and November, 2017, adds multiple levels for use of a computer, number of images, and exchanging images amongst the group, all common characteristics of the offense.

### A. The five-point enhancement for a pattern of sexual exploitation of minors pursuant to §2G2.2(b)(5) is inapplicable.

The PSR bases the enhancement on Mr. Martin's 2003 conviction for predatory criminal sexual assault. However, the enhancement should apply to the offense conduct, rather than any criminal history. In *United States v. Debus*, 688 F.Supp.3d 201 (M.D. Aug. 23, 2023) (Conner, J.), the district court made the distinction. Debus was being sentenced for child pornography and had a prior conviction for unlawful contact with a minor and statutory sexual assault. The district court determined the government's "punitive position…unreasonably expand[ed] the enhancement to reach conduct unrelated to a defendant's offense of conviction." *Id.* at 211. The Court specifically noted that the "pattern of activity" is cited in the "Specific Offense Characteristics" of Chapter Two, rather than the criminal history section in Chapter Four. *Id.* at 210. The defendant's "past conduct lack[ed] any logical or temporal connection to his admitted receipt of child pornography. He did not 'engage' in a pattern-of-activity involving the sexual abuse of a minor when he received the images

3

for which he has pled guilty." *Id.* at 211. *See also, United States v. Ketcham,* 80 F.3d 789, 794 (3rd Cir. 1996) 937 (9th Cir. 1997) ("a defendant who possesses, transports, reproduces, or distributes child pornography does not sexually exploit a minor even though the materials possessed, transported, reproduced, or distributed 'involve' such sexual exploitation by the producer."); §2G2.2(b)(4) (comment n.1).

Like *Debus*, the 5-point enhancement should be rejected. The current offense involved no contact with a minor. Mr. Martin's prior conviction occurred over 23 years ago and is unrelated to the offense. It is already used to enhance his sentence statutorily and within the criminal history category. Section 2252A(a)(1) imposes a minimum sentence of 5 years, that is increased to 15 years because of the prior conviction. The mandatory minimum is increased again, by agreement of the parties, to 20 years. The 2005 conviction also results in 3 criminal history points, placing him in a criminal history category II. For the guideline to then add another substantial enhancement, for conduct unrelated to the offense, is unduly punitive. Without the 5-point enhancement, the guideline range would be 235-293 months.

**B.** **The five-point enhancement pursuant to §2G2.2(b)(7) should not be applied.**

The PSR assessed a 5-point enhancement pursuant to §2G2.2(b)(7). It applied a 75:1 ratio to the "22 videos and 25 images that contained child pornography" to find in excess of 600 images. Plea Agree. at 4. However, the guideline does not define how the term "image" applies to videos. The commentary determines that "each video, video-clip, movie, or similar visual depiction shall be considered to have 75 images." Recently, in *United States v. May*, 2026 WL 114826 (S.C. Jan. 15, 2026) (Currie, J.),

a district court found §2G2.2(b)(7) to be genuinely ambiguous as "the term 'image' …means different things in different contexts" and can refer to both a video and a still image. *Id.* at \*2, *citing United States v. Phillips*, 54 F.4th 374, 382 (6th Cir. 2022). In doing so, the court noted that "a defendant's offense level increases at thresholds of 10, 150, 300, and 600 images. Yet if 'images' meant 'frames' then possessing any video would nearly automatically vault the offender to the top of the range, thereby obviating the purpose of prescribing different levels." *May,* 2026 WL 114826 at \*3, *quoting Phillips*, 54 F.4th at 383. As a result of the ambiguity, the court looked to the commentary and rejected the 75:1 ratio finding it "unmoored from the text of §2G2.2(b)(7)." *Id.* at \*4. The *May* court utilized 1:1 ratio, imposing a 4-level, rather than a 5-level, enhancement. The United States Supreme Court is currently considering how much deference that courts must give to the commentary of the guidelines. *Beaird v. United States,* No. 25-5343 (U.S. cert. granted Apr. 20, 2026).

Like *May*, a 1:1 ratio should be applied. The 75:1 "automatically vaults" the 22 videos "to the top of the range" despite the prevalence of videos in the typical case. *May,* 2026 WL 114826 at \*3, *quoting Phillips*, 54 F.4th at 383. A 2-level increase should be applied under §2G2.2(b)(7).

    **C.**    **The two-point enhancement pursuant to §2G2.2(b)(6) for use of a computer should not be applied.**

A blatant example of an "inherent" offense characteristic is the 2-point enhancement for the use of a computer. While this enhancement may have been relevant when first enacted, today virtually every child pornography offense involves the use of a computer, and the enhancement therefore applies in nearly every case.

Indeed, it did not take long before the Commission itself criticized this enhancement for failing to distinguish between serious and average offenders. *See, United States v. Biddle*, 2014 WL 5089187 at *6 (citation omitted) ("The Sentencing Commission has previously criticized the two-level computer enhancement, finding that the enhancement did not distinguish between serious commercial distributors of online pornography and run-of-the-mill users."). "The vast majority of child pornography offenders today use the Internet or Internet-related technologies to access and distribute child pornography." *Technology and Investigation by Law Enforcement in Child Pornography Cases*, U.S. Sentencing Comm'n, *2012 Report to the Congress: Federal Child Pornography Offenses* 40–41 (2012). The enhancement is effectively universal, rendering it meaningless and no longer reflective of increased culpability. As one judge explained, "[a]s widespread as computer use is now, enhancing for use of the computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved." *United States v. Kelly*, 868 F.Supp.2d 1202, 1209 (2012) (D.N.M. 2012). A specific offense characteristic loses its legitimacy when it has become a constant rather than an aggravating variable. The enhancement should not be applied here.

### D. Restitution

The government seeks $30,000 in restitution pursuant to 18 U.S.C. §2259(a). It provided a spreadsheet with seven claims — five claims for $3,000; one claim for $5,000; and one claim for $10,000. However, no documentation has been provided to

6

support the claims or detail a basis for the amount sought. As such, the defense objects to the amount of restitution claimed.

### E. Objections to the Conditions of Supervised Release - Discretionary Condition 9

Mr. Martin has no objection to a mental health evaluation or treatment. However, he respectfully objects to the mandate that he is required to take any medications prescribed by a mental health treatment provider. Individuals have the right to refuse medication and to informed consent about the nature of the medication. Such a decision should be made by Mr. Martin and his doctor. He has no issue with medication, but objects to a blanket mandate as too speculative. This portion of the condition should be removed and may be addressed if it becomes an issue while on supervised release.

## III. Section 3553(a) factors

The Court is familiar with the wide sentencing discretion under 18 U.S.C. §3553(a) and the Supreme Court decisions of *Booker*, *Gall*, and *United States v. Rita*, 551 U.S. 338 (2007). Ultimately, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing by accounting for the nature and circumstances of the offense, the history and characteristics of the defense, the need for the sentence imposed to satisfy the purposes of sentencing, including deterrence, rehabilitation, and just punishment.

The statutory minimum sentence pursuant to §2252A is 15 years if there is a prior conviction based on a sexual offense. However, the parties have agreed that the minimum should be increased by 5 years. This significant sentence – two decades for

a 46-year-old man – is more than sufficient to provide a just punishment and satisfy the goals of sentencing.

### A. Guidelines

The guidelines are only one factor in the analysis. *United States v. Carter*, 530 F.3d 565 (7th Cir. 2008). Courts are free to disagree with the guidelines and vary from the advisory range based on the facts of the individual case, so long as they act reasonably. *United States v. Corner,* 598 F.3d 411 (2010). The defense adopts the arguments made above and submits that even if properly calculated, the Court may consider the inherent flaws in §2G2.2. Without deprecating the seriousness of the offense, "four of the six enhancements – accounting for a combined 13 offense levels – cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under 2G2.2." *United States v. Jones*, 2021 WL 3609298 at *3, quoting U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (2021). For example, use of a computer and age of the victim have been applied in over 95% of non-production cases; sadistic or masochistic conduct, applied in 84%, and 600 images in 77.2%. *Id.* These enhancements have not kept pace with the prevalence of technology and are present here. PSR ¶18, 20, 22, 23.

In addition, while double-counting is allowed under the guidelines, the Court may consider that Mr. Martin's prior conviction is considered multiple times: (1) increasing the statutory minimum pursuant to §2252A(b)(1), and again by agreement

8

of the parties (Plea Agreement ¶11); (2) the criminal history score; and, (3) a 5-point enhancement for a pattern of activity that was not present in the offense conduct.

## B.     Nature of the offense

Mr. Martin is ashamed of his conduct and accepts responsibility for participating in group chats and exchanging child pornography. The case stemmed from the arrest of an individual in the chat. Law enforcement then gained access and traced IP addresses to several people, including Mr. Martin. A search warrant was executed at his home in June, 2018, although no child pornography was found on any of his devices. Mr. Martin was arrested on November 17, 2020. The offense conduct did not involve any contact or attempted contact with a minor, nor did it involve production of child pornography. By agreement of the parties, Mr. Martin plead guilty to a transportation of child pornography in violation of 18 U.S.C. §2252A and the 15-year mandatory minimum is increased to a 20-year term.

## C.     Mr. Martin's Personal History and Characteristics

Christopher Martin had a difficult upbringing by any standard. He was born to a teenage mother, who was only 13 years old when she got pregnant by an adult male. Another man, Michael Martin, was listed on the birth certificate and Chris did not learn about his parentage until he was a teenager. Michael Martin and Chris' mother eventually married and had a son together.

At age 5, Chris, his mother, and younger brother were home when the house caught fire. Michael Martin had left in the early morning for work. Chris recalls waking up to smoke on his top bunk, hearing his mother screaming, and trying to

9

protect his little brother. He lost consciousness and Michael's brother carried Chris, who was unresponsive, out of the home. His mother, who was 19, and his 2½-year-old brother, could not be saved. Chris harbors tremendous grief for the loss of his family and guilt as the sole survivor.

These memories are very vivid for Chris. He remembers the fire and the funeral as if it were yesterday. It was an incredibly traumatic experience and he still has nightmares. Compounding the tragedy is the fact that the adults in Chris' life took no steps to address the inevitable post-traumatic stress. His fear, anxiety, and sleep disorders manifested immediately. A month after the fire, Chris started kindergarten. He continually fell asleep at school because he was afraid to go to sleep at night. The school recommended counseling, but Michael Martin refused, despite Chris' maternal grandmother and aunt's efforts to persuade Michael.

Until the fourth grade, Chris lived with Michael and his girlfriend who moved often. Michael Martin's girlfriend physically abused Chris and Michael barely acknowledged him. The couple were heavy drug users. They frequently had parties in the house and would lock Chris in his room. At times, Chris would wake up in the morning with strangers in his room doing drugs. ████████████████████ ███████████████████████████ By age nine, he had no emotional security or physical stability.

Chris' childhood was a miserable time. He lost his mother and brother. The man he believed to be his father neglected him ███████████████████████ ████████████ ██ He was afraid to sleep, and while school was a safe place to rest,

10

it provided little respite. Learning was difficult. He had ADD and would not wear his glasses because kids made fun of him.

One bright spot was being allowed to spend some weekends with his maternal grandmother and aunt. But Chris would get so upset when returning to Michael's house, that Michael would punish him by yelling and not letting him return the following weekend.

At approximately age 9, his maternal aunt was able to take custody of Chris and he never saw Michael again until he was 16 years old. Life with his grandmother and aunt was better, although his grandmother's grief from the loss of Chris' mother was prevalent in the household. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

Chris always wanted the love and acceptance of a family and finally established that with his wife Amanda, their 10-year-old daughter, and her 16-year-old son. The family was "inseparable." Letter of Ayden Demario. He speaks with them almost every day. Amanda supports Chris, and confirms he worked hard to make sure their family was "well taken care of." PSR ¶53. He provided a financially and emotionally stable home. He gave his family what he always wanted, but never got

11

as a child. Chris understands and deeply regrets what his choices have cost his family. His wife works nights now and struggles without Chris' support.

Chris worked hard to support the family. He was a certified crane operator, earning multiple safety-related training certificates, and also obtained a commercial driver's license (CDL). He was accepted into the apprentice program for the Local 150 International Union of Operating Engineers as a crane operator. Chris finished the program in two and a half years, well before the usual five-year completion date. Once he graduated, he worked consistently as a crane operator up until his arrest in this case.

Chris's personal history is marked by numerous traumatic episodes. ██████ ████████████████████████████ He was the sole survivor of a house fire that killed his teenage mother and younger brother. He was neglected and abused while under the care of a man he later found out was not his father. Chris has only begun to address these traumas in the last five years during his current incarceration, acknowledging that "I knew it was something I needed to deal with." PSR 66-67. Records verify his mental health treatment while in custody, where he was diagnosed with major depressive disorder and anxiety. He takes medication for these conditions and welcomes any mental health treatment that can be provided. *Id.* at ¶67-68. Trauma treatment options are limited at the facility, but Chris has immersed himself in spiritual programs through the Rockford Reachout Jail Ministry where he has begun to talk about his childhood and gain much needed support. For the last several years, he has actively participated weekly in the group program where he "never

12

missed a class" and organized weekly Bible study amongst other inmates. *See*, character letters, attached as Exhibit A, Letter of John Evans ("Christopher has really gone above and beyond many of our men in helping others and being a leader for the cause of Christ in the pod"), Matthew Robert (Chris "shared life experiences…[and] worked hard to coordinate bible study gatherings"), Jacob Stoeckicht (Chris "had a quiet demeanor and stood apart from all the other inmates in that he was respectful and kind"), and Steve Brandon ("Chris was the most engaged and interested in spiritual things"). Chris' commitment to dealing with his trauma, and his choices, is apparent. He completes the proactive lessons in between sessions and organizes group meetings with other inmates. The letters from volunteers in the program are individuals with frequent and routine contact with Chris over the past several years and demonstrate his commitment to addressing his traumas, confirming that they "have seen a great change in him personally." Ex. A, Letter of John Evans.

Chris has no disciplinary issues in custody and completed 251 educational courses totaling 490 learning hours in self-study programs. PSR ¶4. He also completed in-person programs including two Rockford Reachout Winnebago County Justice Center Spiritual Weekend Programs, where he was also a speaker to other inmates. In addition, he has certificates for an 8-week session of Houses of Healing Emotional Literacy Program, Thinking for Good: Cognitive Behavior Therapy, Co-occurring Disorders Group. *See*, certificates attached as Exhibit B. He is also currently enrolled in a socialization program and has attended a trauma-informed

yoga practice at the jail. *See,* Ex. A, Letter of Stacy Morrissey. Chris is coming to terms with childhood grief and its effect on his life.

Chris experiences numerous health issues. The primary concern is severe back pain. Voluminous medical records were submitted to the probation department citing Spinal Stenosis and Epidural Lipomatosis, as well as lipomas and arthritis, of the L4, L3, and L5. He has undergone several medial branch blocks and neurotomy (an outpatient procedure that uses heat from radio waves to destroy specific nerve tissue that carries chronic pain signals to the brain) to treat the chronic pain, but back surgery is required as the current pain management will not provide a long-term solution. He has chronic pain that inhibits his mobility at times. He also has high blood pressure, increased heart rate, liver conditions including high liver enzymes and a cyst; chronic fatigue from long term COVID, where he was hospitalized for over a week, a torn meniscus in his right knee, torn ligament, arthritis, and rotator cuff issues in his left shoulder, and tinnitus. He has also had pneumonia, shingles, and skin rashes while in custody. It is respectfully requested that the sentencing judgment include a recommendation to the BOP that Mr. Martin be designated to a medical facility to address his medical issues, primarily the need for any necessary back and knee surgery.

### D. The circumstances of his incarceration warrant consideration of a below guideline sentence.

Chris was in custody during the global covid pandemic. The social distancing that essentially shut down the world was nearly impossible in jail facilities and created extremely punitive conditions for pretrial detainees. Courts have recognized

14

the harsh custodial conditions of the pandemic may be considered under §3553(a) and mitigate a sentence. *United States v. Robles*, 553 F.Supp.3d 172, 182 (2021) (the court reasoned that pandemic conditions warranted some adjustment to account for the qualitatively harsher punishment after finding that COVID-19 had made the defendant's imprisonment "far more grueling than Congress or sentencing judge had reason to anticipate," where all visitations were canceled and movement was severely restricted during the height of the pandemic); *United States v. Martínez Encinias*, 682 F.Supp.3d 993 (2023) (compassionate release and sentence reduction granted finding that unanticipated pandemic harshness combined with rehabilitation can collectively constitute extraordinary and compelling reasons); *United States v. Willis*, 663 F.Supp.3d 1203 (2023) (generally harsh pandemic conditions factored into extraordinary and compelling reasons)

For almost 900 days, Winnebago Jail operated under quarantine conditions. Chris was in lockdown for 23 hours a day, being released for only 1 hour – for approximately 1½ years. Visits were suspended and there was limited medical care as numerous people became sick. The restrictions were gradually lifted until quarantine measures ceased in May 2023.

Chris eventually contracted Covid. His cell mate noticed Chris could barely breath and when he passed out, his cell mate did everything possible to alert authorities. Chris believes his cell mate saved his life. He was immediately transported by ambulance to the hospital where he remained for 1½ weeks and was also diagnosed with double pneumonia. He suffers long-term effects of chronic fatigue

15

and experiences heightened symptoms from even a common cold, which now brings increased aches, nausea, dizziness, and loss of taste. It is respectfully requested that the custodial conditions for almost 2½ years mitigates any sentence in this case.

Winnebago County Jail also has harsher pretrial conditions than the MCC. There are no contact visits with family and no outdoor recreation. Winnebago Jail also allows less time for inmates to leave their cell each day.

**E.     A 20-year sentence reflects the seriousness of the offense, promotes respect for the law and just punishment.**

It is undisputed this case will result in a lengthy sentence. Under any benchmark, two decades of life in custody promotes respect for the law and demonstrates the seriousness of the offense. It is also just punishment. Incarcerating Mr. Martin for 30 years or more would focus solely on the offense conduct and past criminal history without any accounting for his tragic upbringing, personal characteristics, ██████████████████████ the work he has done to address the trauma, and the lack of recidivism as he ages. A guideline sentence would fail to offer any reassessment for his rehabilitation over time. He has worked incredibly hard in the last five years to face the trauma of his past – something he had always avoided. He will continue to do so. In a society that sees justice as a strength, it is important to underscore that mercy is not weakness. To the contrary, a grant of mercy is a sign of power – a sign that society is sufficiently confident in its social fabric and moral norms that it can afford not to demand every bit of deserved punishment. A grant of mercy shows that society is not threatened (in terms of safety or its moral

16

norms) by undeserved acts of moral grace." Marah Stith McLeod, *Showing Mercy Through a Presumption of Retribution*, 102 Tex. L. Rev. 1473, 1476 (2024).

A 20-year sentence is more than sufficient to satisfy §3553. Similar sentences have been imposed in other cases where a defendant is a registered sex offender. *See*, *United States v. Hinkley,* 2026 WL 280365 (defendant with 2 sex based convictions engaged in online exchange of child pornography and chats expressing an interest in gaining access to small children was sentenced to 151 months in custody and 10 years of supervised release); *United States v. Stathas*, 2024 WL 4942265 (7th Cir. 2024) (Defendant, a registered sex offender, sentenced to 180 months where he traveled multiple times to meet a 15-year-old girl); *United States v. Reynolds*, 2018 WL 1257751 (S.D. Ill.) (Defendant, a registered sex offender, plead guilty to enticement of a minor and receipt of child pornography and sentenced to 240 months); *United States v. Collins*, 2018 WL 283237 (C.D. Ill. 2018) (Defendant, a registered sex offender, charged with production, receipt, and possession of child pornography, sentenced to 25 years); *United States v. Maynard*, 2025 WL 316113 (C.D. Maryland 2024) (Defendant, a registered sex offender, charged with coercion and enticement of a 14-year old girl and sentenced to 150 months).

The requested sentence of 20 years for individuals with prior sex-related convictions, is commiserate with other similarly situated defendants. From 2020 to 2024, the average sentence for individuals convicted of trafficking child pornography with a prior sexual abuse or child pornography conviction and were subject to a 15-year mandatory minimum penalty, was 257 months. United States Sentencing

17

Commission, FY 2020 through FY 2024 Datafiles.[1] From 2021 to 2025, the total number of sentences under §2G2.2, excluding those who received §5K1.1 reductions, is 16 defendants. The average length of imprisonment is 327 months, and the median is 300 months. *See*, U.S. Sentencing Commission, Judiciary Sentencing Information (JSIN) database.[2]

### F. A 20-year sentence satisfies the goal of deterrence.

There is no doubt a 20-year sentence satisfies the goal of general deterrence that committing this crime will result in a severe penalty. It also achieves specific deterrence. First, research confirms that recidivism rates decline with age. Gary Sweeten, et. al., *Age and the Explanation of Crime Revisited*, 42 J. Youth & Adolescence 921 (2013). *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate,* (May 2004), p. 12. This is also true of sex-related offenses. Philip H. Witt et al., *Age and Sex Offense Recidivism*, 16 Sex Offender L. Rep. 17 (Feb./Mar. 2015). "[R]esearch indicates that sexual recidivism declines significantly with age for groups of sexual offenders. Sexual recidivism rates for groups of sex offenders over 50 are low. For offenders 60 and over, sexual recidivism is a rare event." *Id.* Mr. Martin is 46 years old and even 20-year sentence would place him past 60 upon release.[3]

---

[1] https://www.ussc.gov/research/quick-facts

[2] https://jsin.ussc.gov

[3] In addition, lengthy sentences are costly. The annual cost of incarceration is approximately $54,900, while the annual cost of supervision by the probation office is $6,222. PSI, ¶104; *see*, *United States v. Bernier,* 758 F.Supp. 195 (S.D.N.Y. 1991) (downward departure included fact that a guideline sentence

Mr. Martin would then be on a lengthy period of supervised release where he would be fully monitored. The lack of specific deterrence is supported by the fact that Mr. Martin was not arrested at the time a search warrant was executed at his home. No evidence was recovered from the warrant, but law enforcement already possessed the crux of the evidence against him, namely that his IP address was used in the Kik group chat. For the next two and a half years until his arrest, Mr. Martin was employed full-time and cared for his family with no evidence of further criminal conduct.

The government's recommended sentence of 37 years is only slightly less than the maximum and focuses on hallmarks of the pre-*Booker* era – the offense conduct and criminal history. These are only two of several factors under §3553(a) the Court must consider. As the cases cited above demonstrate, the government's recommendation is well-beyond other similarly situated cases.

The prior conviction occurred over 23 years ago. It is accounted for multiple times – in the statutory minimum, in the agreement of the parties to increase the statutory minimum, in the criminal history score, and in the guidelines. Congress determined a 15-year mandatory minimum sentence was warranted where a defendant had such a prior conviction and the requested sentence goes above and beyond that floor. Any sentence imposed here will be at least three times longer than

---

would "cost the taxpayers in the neighborhood of $680,000"). Here, the difference between a 20-year and a 30-year sentence is over half a million dollars.

amount of custody previously served. Moreover, this case did not involve any contact or attempted contact with a minor and occurred during a limited period of time.

## IV.    Conclusion

Nothing here is intended to diminish the seriousness of the offense. Mr. Martin recognizes his actions are what brought him here today and accepts the substantial punishment that must follow. However, his personal tragic history, the work he has done to address the trauma, the significant term of the minimum sentence, and his age warrant a below-guideline sentence. It is respectfully requested the Court impose a sentence of 240 months, to be followed by any term of supervised release the Court deems appropriate. Such a sentence is sufficient but not greater than necessary to satisfy the requirements of §3553(a).

Respectfully submitted,

/s/ *Susan M. Pavlow*
Attorney for defendant

SUSAN M. PAVLOW
Attorney for defendant
53 West Jackson Boulevard, Suite 1550
Chicago, Illinois 60604
312-322-0094
smpavlow@mac.com

20